IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 APR 30 PM 5: 55

NANCY M.
MAYER-WHITTINGTON
CLERK

| | |
|---|---|
| **CLIENTS OF 801-EAST SHELTER,** AND ALL OTHERS SIMILARLY SITUATED, AND IN THE INTRESTS OF THE GENERAL PUBLIC,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CATHOLIC CHARITIES,<br>Also known as the<br>CATHOLIC COMMUNITY SERVICES OF THE<br>ARCHDIOCESE OF WASHINGTON,<br>Also known as the<br>ASSOCIATED CATHOLIC CHARITIES OF THE<br>ARCHDIOCESE OF WASHINGTON<br>INCORPORATED,<br>924 G Street, N.W.<br>Washington, D.C. 20001,<br>**HAWK ONE SECURITY INCORPORATED,**<br>1331 H Street, N.W.<br>Washington, D.C. 20005,<br>**KATE JESBURG,** | ) Case No.: 1:07-cv-00198-RMC<br>)<br>) **NOTICE OF MOTION TO AMEND COMPLAINT**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

- 1

1  In her official capacity as Interim
2  Director of the Government of the
3  District of Columbia Department of
4  Human Services (DHS)
5  64 New York Avene, N.E., 6th Floor
6  Washington, D.C. 20002,
7  **DC CENTRAL KITCHEN,**
8  425 Second Street, N.W.
9  Washington, D.C. 20001,
10 **MARTHA'S TABLE,**
11 2114 14th Street, N.W.
12 Washington, D.C. 20009
13          **Defendants.**

## MOTION TO AMEND COMPLAINT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

The as named plaintiff, Francwa Sims, acting as principal, in *pro per*, proceeding *Sui Juris* and all similarly situated clients (collectively, "Plaintiffs") of the 801 East Shelter ("801 Shelter") located at 2700 Martin Luther King Avenue S.E. Washington, D.C. 20032, hereby moves this Honorable Court to enter an Order granting him leave to Amend the Complaint, *Sims v. Catholic Charities, et al*, pursuant to Federal Rules of Civil Procedure 15(a).

The motion is made on the grounds that after filing his complaint, the

1 principal would also like to add other facts and conjecture relevant to this
2 case. This is to insure if other possible rights of the Plaintiffs are
3 specified and noted. May it also be noted that the principal does not agree
4 with the court that he should be his name is "singled out" as such that
5 possible harm and retaliation my come to him. He is not an attorney in any
6 jurisdiction, a member of the Bar or in any profession relating to law
7 enforcement. He is a private citizen of the United States, a homeless
8 individual acting without any legal representation. The principal has taken
9 great risk and shown courage to attempt to utilize the court system in this
10 manner.

## STATEMENT OF FACTS

12    In January 2007, Plaintiffs filed the above-entitled action in the
13 United States District Court for the District of Columbia. The Plaintiffs is
14 based on their treatment by Catholic Charities ("CC") staff and harsh
15 conditions at the 801 East Shelter ("801 Shelter").
16    Since then, the plaintiffs have in some part, received better
17 treatment. Mostly, the harsh, unsanitary conditions have not changed. Also,
18 there are several new concerns.
19    Many of the issues addressed in *Sims v. Catholic Charities, et al* have
20 not been addressed.
21        1. CC are in violation of the "Homeless Services Reform Act of 2005"
22           (HSRA).
23        2. CC and Hawk One Security Incorporated ("Hawk One") has abused
24           their authority under their contract with DHS in violating the
25           rights of Plaintiffs under the Equal Protection rights under the

Fourth Amendment of the United States Constitution.

3. Hawk One has also assaulted, threatened Plaintiffs with physical harm.

4. CC and Hawk One staff are still not "Appropriately trained and qualified", "Culturally competent", and they do not provide "Supportive services"

5. DC Central Kitchen still serves "stuff that a dog wouldn't touch" food to Plaintiffs at facilities operated by CC.

6. Martha's Table is still using Federal grant money and private donations to serve stale, moldy Bologna and cheese sandwiches with stale pastries. They are also habitually tardy or absent.

7. There are no programs to help find permanent housing. There are no job search/placement programs. Plaintiffs can't get any transportation assistance in the form of Metrobus or Metrorail fares.

8. There is no adequate medical care or follow-up provided or after care for people that are released from area hospitals.

9. CC are in violation of the D.C. Code "False Fire Alarms" § 22-1319. *False alarm of fire; prosecution [Formerly § 22-1119].*

10. Licensed food service staff is not handling the food served by DC Central Kitchen by licensed food service staff.

11. The sanitary conditions have not improved. CC has violated the HSRA to provide sanitary conditions of the restroom areas, shower areas, dining room areas, and dorm sleeping areas. The mattresses in the dorm sleeping areas are unclean. The floors are not

cleaned daily. The staff when they do clean after Plaintiffs leave they take plaintiff's clothes and throw them away. No one has any blankets and we have to use sheets with rips stains and holes in them.

12. The CC Staff constantly harasses, disrespects and is rude toward Plaintiffs.

## **LEGAL ARGUMENT**

Catholic Charities are in violation of the "Homeless Services Reform Act of 2005" ("HSRA").

Hawk One Security; Inc. ("Hawk One") has no right to search Plaintiffs property, especially without their consent. Refusal should not be a bar to entry into the shelter. To do so otherwise is a violation of an individual's constitutional rights as a citizen under the Fourth Amendment.

"The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no such duty [to submit his books and papers for an examination] to the State, since he receives nothing there from, beyond the protection of his life and property. His rights are such as existed by the law of the land [Common Law] long antecedent to the organization of the State, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his rights are a refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under a warrant of the law. He owes nothing to the public so long as he does not trespass upon their rights." *Hale v. Henkel*, 201 U.S. 43 at 47 (1905).

One could also conclude that:

"Waivers of Constitutional Rights not only must be voluntary, they must be knowingly intelligent acts, done with sufficient awareness of the relevant circumstances and consequences." *Brady v. U.S.*, 379 U.S. 742 at 748 (1970).

Hawk One is searching Plaintiffs belongings without probable cause. In *State of New Jersey vs. SJ Courty*, "consent searches" during traffic stops, where individuals are asked for consent to search themselves of their vehicles are unconstitutional without reasonable, articulate, suspicion, of a crime. On this note, when Plaintiffs open their luggage to give their consent to be searched by Hawk One and CC Staff, Plaintiffs are being unjustly harassed without probable cause of any crime being committed.

Is CC and Hawk One fully complying with the HSRA in terms of security? Is CC using an implied consent to cause the residents to unknowingly waive their Constitutional Rights as a requirement to accept services under the HSRA?

Plaintiffs barely receive basic services from CC other than a shower, a locker and a cot to sleep in for twelve hours (if that). CC or Hawk One does not guarantee protection of life and property. Under the HSRA it is not mentioned or implied that the Plaintiff must consent to a search of his belongs. The HSRA only states that weapons, drugs, and alcohol are prohibited from the premises.

This is a shelter, not a halfway house or anything pertaining to a prison institution. Therefore, Plaintiffs think that Hawk One is superseding their authority against the Fourth Amendment of the Constitution of the United States and the decisions of the Supreme Court of the United States.

DC Central Kitchen serves food at facilities operated by Catholic Charities on a regular basis to provide meals to Plaintiffs. It being that this is done on a regular basis, there appears to be a contractual service relationship with regard to the business relations involving these two non-profit agencies.

All the grant money and donations that Martha's Table receives and all they can give is a stale Bologna and cheese sandwich to a hundred people? There are times that there aren't any sandwiches at all. They also have a tendency to show up late or not at all.

CC is in violation of the D.C. Code "False Fire Alarms" § 22-1319. *False alarm of fire; prosecution [Formerly § 22-1119]*. A fire alarm system should not be used as a wake-up alarm. It should not go off at two-o-clock in the morning. It should not ring multiple times every night.

CC claims that there is a problem with the fire control system. If this was so, then there would have been an attempt to get it inspected and fixed.

This is a pressing concern that if there is an actual fire one day, no one will know what to do. Is it a joke? Is it a false alarm? Is there any smoke?

### REQUESTED ACTIONS

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment for Plaintiffs and ORDER the following ACTIONS:

(a) The Mayor of the District of Columbia under the provisions specified in the HSRA must take an active role. This is not the current mayor's problem. He has inherited this system from the previous mayor. The Mayor has not yet visited the "801 Shelter" to inspect conditions and talk to the Plaintiffs

there.

(b) It is estimated that the District of Columbia and the Federal Government are jointly spending at least $186 dollars per person to provide basic needs under the HSRA. Catholic Charities, D.C. Central Kitchen, and Martha's Table needs to be closely monitored and investigated.

(c) A permanent injunction prohibiting Hawk One, as under contract of DHS, and their employees, agents, officers, representatives, servants and Catholic Charities staff from violating the Fourth Amendment rights and threatening the safety of the Plaintiffs.

(d) An investigation into the finances and practices of Catholic Charities, Martha's Table, D.C. Central Kitchen and Hawk One Security, Inc.

(e) Provide for expeditious proceedings in this action.

(f) An award to the Principal as named and the plaintiffs of attorney's fees and for costs of suit; and

(g) An award of such other relief and compensation as the Court may deem just and proper.

Dated this 04/29/2007

Respectfully submitted and sworn, without prejudice, and with all rights reserved,

*Francesca Sims*  4/30/07

Principal, in *Pro Per*, proceeding *Sui Juris*.

*[Handwritten: 4/30/07    DC Code False Fire Alarms]*

### § 22-1319. False alarm of fire; prosecution [Formerly § 22-1119].

✓ (a) It shall be unlawful for any person or persons to wilfully or knowingly give a false alarm of fire within the District of Columbia, and any person or persons violating the provisions of this section shall upon conviction, be deemed guilty of a misdemeanor and be punished by a fine not exceeding $100 or by imprisonment for not more than 6 months, or by both such fine and imprisonment. Prosecutions for violation of the provisions of this section shall be on information filed in the Superior Court of the District of Columbia by the Attorney General of the District of Columbia or by any Assistant Attorney General.

(b) (1) It shall be unlawful for any person to willfully or knowingly make, or cause to be made, a false or fictitious report to any individual which initiates a response by District of Columbia emergency personnel or officials, wherein such report involves, is alleged to involve, or may reasonably be deemed to involve, the delivery, presence, or use of a weapon of mass destruction, as defined by § 22-3152(12), within the District of Columbia.

(2) It shall be a violation of this subsection for any person to willfully and knowingly give, transport, mail, send, or cause to be sent any hoax weapon of mass destruction, as defined by § 22-3152(3), to another person or to place any such hoax weapon of mass destruction in or upon any real or personal property.

(3) Any person violating the provisions of this subsection shall, upon conviction, be guilty of a misdemeanor and be punished by imprisonment of not more than one year or fined in an amount not to exceed the greater of $10,000 or the costs of responding to and consequential damages resulting from the offense, or both.

(c) (1) It shall be unlawful for anyone to willfully or knowingly, with the intent of intimidating or frightening people, causing panic or civil unrest, extorting profit, or causing economic damage, make, or cause to be made, a false or fictitious report to any individual, which initiates a response by District of Columbia emergency personnel or officials, wherein such report involves, is alleged to involve, or may reasonably be deemed to involve, the delivery, presence, or use of a weapon of mass destruction, as defined by § 22-3152(12), within the District of Columbia.

(2) It shall be a violation of this subsection for any person to willfully or knowingly, with the intent of intimidating or frightening people, causing panic or civil unrest, extorting profit, or causing economic damage, give, transport, mail, send, or cause to be sent any hoax weapon of mass destruction, as defined by § 22-3152(3), to another person or to place any such hoax weapon of mass destruction in or upon any real or personal property.

(3) Any person violating the provisions of this subsection shall, upon conviction, be guilty of a felony and may be punished by imprisonment of not more than 5 years or fined in an amount not to exceed the greater of $50,000 or the costs of responding to and consequential damages resulting from the offense, or both.

(d) (1) It shall be unlawful for any person to willfully or knowingly, during a state of emergency, as declared by the Mayor pursuant to § 7-2304, with the intent of intimidating or frightening people, causing panic or civil unrest, extorting profit, or causing economic damage, make, or cause to be made, a false or fictitious report to any individual, which initiates a response by District of Columbia emergency personnel or officials, wherein such report involves, is alleged to involve, or may reasonably be deemed to involve, the delivery, presence, or use of a weapon of mass destruction, as defined by § 22-3152(12), within the District of Columbia.

(2) It shall be a violation of this subsection for any person to willfully or knowingly, during a state of emergency, as declared by the Mayor pursuant to § 7-2304, with the intent of intimidating or frightening people, causing panic or civil unrest, extorting profit, or causing economic damage, give, transport, mail, send, or cause to be sent any hoax weapon of mass destruction, as defined by § 22-3152(3), to another person or to place any such hoax weapon of mass destruction in or upon any real or personal property.

(3) Any person violating the provisions of this subsection shall, upon conviction, be guilty of a felony and may be punished by imprisonment of not more than 10 years or fined in an amount not to exceed $100,000 or the cost of responding to and consequential damages resulting from the offense, or both.

(e) For the purposes of subsections (b), (c), and (d) of this section, the manner in which the false or fictitious report is communicated may include, but is not limited to:

(1) A writing;

(2) An electronic transmission producing a visual, audio, or written result;

(3) An oral statement; or

(4) A signing.

(f) There is jurisdiction to prosecute any person who participates in the commission of any offense described in this section if any act in furtherance of the offense occurs in the District of Columbia or where the effect of any act in furtherance of the offense occurs in the District of Columbia.

(June 8, 1906, 34 Stat. 220, ch. 3055, §§ 1, 2; Apr. 1, 1942, 56 Stat. 190, ch. 207, § 1; July 8, 1963, 77 Stat. 77, Pub. L. 88-60, § 1; July 29, 1970, 84 Stat. 570, Pub. L. 91-358, title I, § 155 (a); 1973 Ed., § 22-1119; 1981 Ed., § 22-1119; May 21, 1994, D.C. Law 10-119, § 8, 41 DCR 1639; Oct. 17, 2002, D.C. Law 14-194, § 153, 49 DCR 5306; Apr. 7, 2006, D.C. Law 16-91, § 142, 52 DCR 10637.)